

NUMBER 13-09-00520-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

PEDRO ALEXANDER JIMENEZ,                           **Appellant,**

**v.**

THE STATE OF TEXAS,                                    **Appellee.**

### On appeal from the 377th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Garza
### Memorandum Opinion by Chief Justice Valdez

A Victoria County grand jury indicted appellant, Pedro Alexander Jimenez, for

engaging in family violence assault, a third-degree felony.[1]  *See* TEX. PENAL CODE ANN. §

22.01(a)(1), (b)(2) (Vernon Supp. 2009); TEX. FAM. CODE ANN. § 71.003 (Vernon 2008).

After a jury trial, Jimenez was convicted of the underlying offense and sentenced to fifteen

years' incarceration in the Institutional Division of the Texas Department of Criminal

Justice.[2]  By one issue, Jimenez argues that the evidence supporting his conviction is

factually insufficient.  We affirm.

## I. BACKGROUND

This appeal pertains to a domestic dispute between Jimenez and his girlfriend, Ileina

Fernandez, allegedly transpiring on October 27, 2008.  Officer Joseph Felan, a certified

peace officer with the Victoria Police Department, testified that, on the night in question,

he responded to a dispute occurring at 106 Basin in Victoria, Texas.  The dispatch

indicated that a fight was in progress.  Upon arriving at the residence, Officer Felan

observed Fernandez wrapped in a blanket with numerous scratches, a swollen face, and

a bloody lip.  When Officer Felan asked Fernandez what had happened, Fernandez told

him that Jimenez had punched and kicked her.  Fernandez was crying throughout Officer

Felan's questioning of the witnesses.

Fernandez's then-thirteen-year-old daughter, E.R., offered a written statement to

police a couple of weeks after the incident.  E.R. noted in her written statement and in her

testimony at trial that she heard Jimenez and Fernandez yelling on the night in question,

---

[1] The record reflects that Jimenez was previously convicted of family violence assault on June 28, 2004, which enhanced the current family violence assault charge to a third-degree felony.  *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (Vernon Supp. 2009).

[2] Jimenez's sentence was further enhanced to second-degree-felony status by a prior felony assault conviction on May 30, 2007.  *See id.* §§ 12.42(a)(3) (Vernon Supp. 2009), 22.01(a)-(b).  The punishment range for a second-degree felony is two to twenty years' confinement with a possible fine not to exceed $10,000.  *Id.* § 12.33 (Vernon Supp. 2009).

and she observed Jimenez punching and kicking Fernandez in the face and head. After seeing her mother being attacked by Jimenez, E.R. attempted to call the police, but Jimenez took the phone from E.R. and tossed it outside. Shortly thereafter, E.R. was able to retrieve her phone, and she called to tell her grandmother, Ann Garfield, about the attack. E.R. testified at trial that Garfield was her legal guardian and that she stayed with Fernandez on occasion with her younger brother, A.F. Garfield home-schooled E.R. and allegedly assisted E.R. in making her written statement. Both Garfield and E.R. testified that Garfield's help regarding the written statement consisted of correcting E.R.'s spelling and grammar errors.[3]

Garfield testified that she received E.R.'s call around 1:00 a.m., and that she immediately called the police after she hung up with E.R. After calling the police, Garfield drove to Fernandez's house and observed that Fernandez's face was swollen and that she was bleeding. Garfield recalled Fernandez telling her that Jimenez had stated that he would kill Fernandez.

Fernandez recalled that, on the night in question, she had attended a party at a friend's house while leaving the children home alone and that she was intoxicated because she had consumed a full bottle of Bacardi rum that night.[4] She noted that she and Jimenez were in a relationship and that Jimenez was the father of A.F. When she returned from the party, Jimenez came by the house. Apparently, the two got into a fight over a comment

---

[3] The record reflects that Garfield is Fernandez's mother, and on appeal, Jimenez suggests that Garfield coerced E.R. to falsify her written statement to police and that Garfield pushed to have Jimenez charged with the underlying offense when Fernandez refused to press charges or speak to law enforcement regarding the incident.

[4] E.R. noted that Fernandez had drunk alcohol in front of her before and that she would get "kind of scary" when she did so.

that Fernandez had made about another man who had attended the party. Fernandez testified that the fight escalated and that Jimenez started hitting and kicking her in the face. She recalled that the fight began in Fernandez's room, moved to the living room, and concluded outside. Fernandez cried out to E.R. to help her, and the fight ended when Fernandez's neighbor, who was described as a priest, came outside to see what was happening. Jimenez then fled from the scene into a field that was located adjacent to the house.

Trial began in this matter on August 9, 2009. At the conclusion of the trial, the jury convicted Jimenez of family violence assault and sentenced him to fifteen years' incarceration in the Institutional Division of the Texas Department of Criminal Justice.[5] This appeal ensued.

## II. ANALYSIS

By his sole issue on appeal, Jimenez asserts that the evidence supporting his conviction is factually insufficient. We disagree.

## A. Standard of Review and Applicable Law

In conducting a factual sufficiency review of the evidence, a court of appeals reviews the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or against the great weight and preponderance of the evidence. *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008); *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would

---

[5] During the punishment phase of trial, Jimenez admitted to assaulting Fernandez on the night in question; however, he blamed his actions on his alcohol consumption that night.

have decided the question differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Watson*, 204 S.W.3d at 417. We may not simply substitute our judgment for that of the fact-finder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000).

> Although authorized to disagree with the jury's determinations even if probative evidence exists which supports the verdict, a reviewing court must give due deference to the fact[-]finder's determinations concerning the weight and credibility of the evidence and will reverse the fact[-]finder's determination only to arrest the occurrence of a manifest injustice.

*Swearingen v. State*, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003); *see Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (holding that even when contradictory witness testimony is compelling, the court must give deference to the fact-finder's decision, unless the record clearly reveals an appropriate contrary result).

As is the case with legal sufficiency review, we review the factual sufficiency of the evidence as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not necessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. Under the penal code, a defendant commits family violence assault if he intentionally, knowingly, or recklessly caused bodily injury[6] to family member. *See* TEX. PENAL CODE

---

[6] The Texas Penal Code defines "bodily injury" as "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (Vernon Supp. 2009). The Texas Court of Criminal Appeals has held that "bodily injury" encompasses even relatively minor physical contacts, so long as the contact was more than just offensive touching. *See Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989); *see also Arzaga v. State*, 86 S.W.3d 767, 778-79 (Tex. App.–El Paso 2002, no pet.).

ANN. § 22.01(a), (b)(2).  The offense is enhanced if the State also establishes that the victim is a family member, as defined by section 71.003 of the family code, and the defendant has been previously convicted of domestic violence.  *See id.* § 22.01(b)(2); *see also* TEX. FAM. CODE ANN. § 71.003.  Section 71.003 of the family code defines "[f]amily" as, among other things, "individuals who are the parents of the same child, without regard to marriage. . . ."  TEX. FAM. CODE ANN. § 71.003.

A person acts intentionally "with respect to . . . a result of his conduct when it is his conscious objective or desire to . . . cause the result of his conduct." TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2003).  A person acts knowingly "with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result."  *Id.* § 6.03(b). Finally, a person acts recklessly "with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur."  *Id.* § 6.03(c). Intent to commit family violence assault may "be inferred from circumstantial evidence[,] such as acts, words, and the conduct of the appellant."  *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

**B.    Discussion**

Here, E.R., Garfield, and Officer Felan testified that Fernandez had numerous scratches, a swollen face, a bloody lip, and was crying on the night in question.  Officer Felan recounted that Fernandez told him that Jimenez punched and kicked her in the face. Fernandez stated in open court that her injuries were caused by Jimenez's punches and kicks to her face.  E.R. testified and produced a written statement identifying Jimenez as the perpetrator of this assault and recalling that Jimenez had punched and kicked

6

Fernandez in the face. Fernandez also testified that Jimenez fled the scene upon being discovered by the "priest" who lived next door. *See Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007) (holding that a fact-finder may draw an inference of guilt from the circumstance of flight from the crime scene). Both E.R. and Fernandez identified Jimenez as the father of A.F. and noted that Fernandez and Jimenez were in a relationship; thus, Fernandez and Jimenez are "family" under the Texas Family Code. *See* TEX. FAM. CODE ANN. § 71.003. Holly Jedlicka, a crime scene unit supervisor with the Victoria Police Department, testified that Jimenez had previously been convicted of felony assault on May 30, 2007, and family violence assault on June 28, 2004. *See* TEX. PENAL CODE ANN. § 22.01(b)(2); *see also* TEX. FAM. CODE ANN. § 71.003.

On appeal, Jimenez suggests that the evidence is factually insufficient because E.R.'s written statement to police was possibly coerced by Garfield. Jimenez also suggests that Fernandez's intoxication on the night in question, her subsequent refusal to press charges against Jimenez,[7] and her prior conviction for perjury demonstrates that her testimony about the incident cannot be trustworthy.

With respect to Jimenez's arguments on appeal, Garfield and E.R. both testified that Garfield only helped E.R. correct spelling and grammar errors in E.R.'s written statement. Both witnesses denied that Garfield had somehow written the statement for E.R. or forced E.R. to include statements that were not true upon questioning by Jimenez's defense counsel. In any event, it was within the province of the jury to determine the credibility of E.R. and Garfield's statement regarding the written statement, and it appears that the jury

---

[7] Regarding Fernandez's refusal to press charges against Jimenez and her refusal to speak with investigators after the night of the incident, Amanda Clemons, a detective with the Victoria Police Department, testified that victims often refuse to "pursue these types of cases" for "[f]inancial reasons, fear of retaliation, sense of feeling that they deserved it, that they were the cause of it."

found E.R. and Garfield to be credible. *See Lancon*, 253 S.W.3d at 705; *see also Swearingen*, 101 S.W.3d at 97. Furthermore, both Fernandez and E.R. testified in open court about the events transpiring on the night in question, thus making the contents of the written statement cumulative of other evidence in the record. *See, e.g., Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (stating that "'[a]n error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection'") (quoting *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)). Moreover, we do not find Jimenez's argument that Fernandez's testimony was untrustworthy and should somehow be discounted to be plausible because, once again, it was within the province of the jury to determine the weight and credibility of her testimony. *See Lancon*, 253 S.W.3d at 705; *see also Swearingen*, 101 S.W.3d at 97. Despite Fernandez's documented transgressions, it is clear that the jury believed her testimony, especially considering that several unobjected-to pictures were admitted into evidence which showed the injuries that Fernandez sustained as a result of the attack and, thus, corroborated her testimony. *See Lancon*, 253 S.W.3d at 705; *see also Swearingen*, 101 S.W.3d at 97.

Reviewing the evidence in a neutral light, we cannot say that the jury's verdict is so weak as to be clearly wrong and manifestly unjust, nor can we say that the jury's verdict is against the great weight and preponderance of the evidence. *See Neal*, 256 S.W.3d at 275; *see also Watson*, 204 S.W.3d at 414-15. Accordingly, we hold that the evidence supporting Jimenez's conviction is factually sufficient. *See Neal*, 256 S.W.3d at 275; *see also Watson*, 204 S.W.3d at 414-15. Thus, we overrule his sole issue on appeal.

### III. Conclusion

Having overruled Jimenez's sole issue on appeal, we affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
19th day of August, 2010.